**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ARTHUR ANDERSON,

Plaintiff, Case No. 2:24-cv-10920

v. Hon. Brandy R. McMillion
United States District Judge

FCA US LLC,
*doing business as*, STELLANTIS
NORTH AMERICA,

Defendant.
_______________________________________/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 23)**

In September 2023, after nearly 40 years of service, Plaintiff Arthur Anderson's ("Anderson") employment was terminated by his former employer, Defendant Fiat Chrysler Automobiles US LLC ("FCA"), doing business as Stellantis North America. *See* ECF No. 1. Anderson responded by filing this wrongful discharge and failure to promote action under the federal Age Discrimination in Employment Act of 1967, 29 U.S.C. §§621-634 ("ADEA"), and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101 *et seq.* ("ELCRA"). *See id.* FCA now moves for summary judgment on all claims under both counts pursuant to Federal Rule 56. *See* ECF No. 23. The Motion is adequately briefed for the Court to rule on the merits based upon the record as it stands, without requiring oral

argument. *See* ECF Nos. 28, 32; E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, FCA's Motion for Summary Judgment (ECF No. 23) is **DENIED**.

## I.

Anderson is a 64-year old Engineer, who devoted his entire career to FCA. ECF No. 28, PageID.524. He was hired in January 1984 by FCA's predecessor Chrysler[1] as a Product Engineer, working on transmission design. ECF No. 28-4, PageID.577. For the next 13 years, his roles changed from product engineer, to senior product engineer, and eventually supervisor product engineer. *See* ECF No. 28-3. PageID.574-575. From December 1997 to October 2010, Anderson was a Senior Manager, overseeing advanced vehicle design and related activities. *Id*. He was responsible for the Daimler Chrysler's $300 Million Crossfire Program, managing 250 engineers to build the Crossfire sport car. *Id*.

From October 2010 to July 2013, Anderson was the Chief Engineer for the B-Segment Vehicle Program, developing the Jeep Renegade. *Id.* at PageID.575. From there, Anderson served as the Company's Vehicle Line Executive for A, B, and C Segment Vehicle Program, where he was responsible for the Company's $4 billion investment in the Jeep Compass program. *Id.* During this time, Anderson was praised for getting the 2017 global launch of the Jeep Compass "earlier than

[1] The Court notes that Chrysler became FCA, then Stellantis, following mergers. ECF No. 28, PageID.536.

planned," at production volume rate and below cost targets. *See* ECF No. 28-12, PageID.606.

In March 2017, Anderson was promoted again to serve as the Director of Large Platform – Chief Vehicle Engineer, responsible for developing the next generation of battery electric vehicles ("BEV"). *See* ECF No. 28-3, PageID.574-575. In June 2022, Anderson was promoted again to Vice President – Large Vehicle Platform Chief Engineer, responsible for the large Vehicle Platform creation, development, and execution into production.[2] *Id.* This was his last role at FCA.

**Anderson's Historical Job Performance**

The parties disagree about how to characterize Anderson's tenure at FCA. Anderson asserts that apart from his 2022 review, he had a consistently strong performance record over his 39 years at FCA, as reflected by his performance reviews and promotions. ECF No. 28-2, PageID.561-562. FCA views Anderson's record differently, stating that as early as 2012, Anderson had been put on notice that despite having strong technical skills, his leadership and communication skills needed improvement. *See* ECF No. 23-6; ECF Nos. 23-9 through 23-18. The record reflects that Anderson's performance reviews generally ranged from "medium" to "high." *See* ECF Nos. 28-5 to 28-16. In each of the four years that preceded 2022,

---

FCA disputes that Anderson was promoted—rather, they assert that Anderson was reclassed as a vice president based on the scope of his position, not merit. ECF No. 23-7, PageID.340.

Anderson received an "8" out of "9" in his overall performance evaluations in each year from 2018 through 2021. ECF Nos. 13-16.

**Relationship Between Anderson and Jacquet**

In his final role at FCA, Anderson reported to both his direct supervisor, Brenna Kaufman ("Kaufman"), and Kaufman's supervisor, Sebastian Jacquet ("Jacquet"), who became the Senior Vice President – Cross Car Line and Project Engineering in February of 2022. *See* ECF No. 28-41, PageID.1077, ECF No. 28-42, PageID.1131. Anderson was tasked with leading the development of the STLA Large platform, which was an electric vehicle project that FCA expected would be the platform for eight different vehicles. ECF No. 23-3, PageID.166, 170.

As Anderson, Jacquet, and the STLA Large team met throughout 2022 and 2023, the relationship between Anderson and Jacquet grew strained. FCA asserts that Anderson was too focused on the technical aspects of the platform at the expense of other considerations, and that despite Jacquet's repeated directives, Anderson failed to address concerns about the platform's cost and weight. ECF No. 23-5, PageID.305. Anderson counters that despite having a different opinion about how to develop the platform and whether Jacquet's ideas were feasible, he continuously proposed and implemented changes that were responsive to Jacquet's feedback. *See* ECF No. 28-40, PageID.802-812. At different points, Jacquet characterized Anderson as being "too conservative" in his approach to the platform's development.

ECF No. 28-41, PageID.1082. Jacquet also indicated to others on his team that he wanted "fresh blood" on the team and STLA Large project. ECF No. 28-20, PageID.636.

**Jacquet Begins to Explore Removing Anderson from STLA Large**

At the end of 2022, Jacquet started to consider removing Anderson from the STLA Large team. ECF No. 23-5, PageID.307. In February 2023, Jacquet began to take action steps to remove Anderson. *Id.* at PageID.307-308. That month, Jacquet began meeting with members of FCA's Human Resources Department ("FCA HR") to discuss who could replace Anderson. *Id.* at PageID.308; ECF No. 28-46, PageID.1437. Kaufman testified that Jacquet wanted to remove Anderson from his position at STLA Large "immediately." ECF No.28-42, PageID.1148.

Throughout the process and due to different norms in France and in the United States, FCA HR had to continuously advise Jacquet that he should not talk about retirement with Anderson. ECF No. 28-43, PageID.1288-1289. Serena Monroe ("Monroe"), an official from FCA HR, testified that "in France, it's actually, a common practice for them to encourage people to retire" and that Jacquet had "blatantly asked [her] two or three times in the duration that [she] worked with him, 'Is it ever appropriate to encourage people to retire?" ECF No. 28-43, PageID.1288. Kaufman likewise testified that she was concerned that Jacquet would "look at Art

[Anderson] and say something to the effect of why don't you just retire." ECF No. 28-42, PageID.1178.

**2022 Performance Review**

Jacquet began exploring Anderson's removal at a time that coincided with FCA's annual performance review process. ECF No. 28-42, PageID.1133-1134. Kaufman, as Anderson's direct supervisor, was responsible for proposing an initial rating for Anderson's performance in 2022, after which she would bring her proposed rating to the Executive CCLP Team for calibration. ECF No. 28-42, PageID.1133. Kaufman proposed rating Anderson a "2" out of "4," which indicated that he met all expectations. ECF No. 28-41, PageID.1081.[3] At the calibration session, however, Jacquet—who had final decision-making authority on the performance reviews of his team members—overrode Kaufman's proposed rating and lowered Anderson to a "3," which indicated that he met some expectations but needed to improve. ECF No. 28-42, PageID.1134.

Kaufman and Monroe met with Anderson in March 2023 to discuss his performance review. ECF No. 23-3, PageID.172. This meeting was the first time FCA informed Anderson in writing that he was not meeting expectations in his Vice President role. ECF No. 28-43, PageID.1263.

[3] Between 2021 and 2022, FCA adopted new performance appraisal guidelines. ECF No. 28-23, PageID.643. Under the new guidelines, employees were rated on a 1-4 scale, with "1" being highest and "4" being the lowest. *Id.*

**FCA HR Cannot Find a New Position for Anderson**

Kaufman and Monroe met with Anderson again on May 30, 2023—this time, they informed Anderson that Jacquet had decided to remove him as the head of STLA Large and that Monroe was trying to find a new position for him. ECF No. 28-42, PageID.1167-1168. As Monroe later testified, Anderson's negative performance review from 2022 impacted his prospects of finding a new role, either within his division or elsewhere at FCA, because FCA employees who receive a low performance rating are removed from the organization's succession plans. ECF No. 28-43, PageID.1278-1279. Monroe's efforts to find a new position for Anderson were ultimately unsuccessful. *Id.* at PageID.1241.

Other employees at FCA made moves while Anderson stalled. Early in 2023, Anderson learned that the Senior Vice President of Advanced Vehicle Engineering was retiring, but Jacquet confirmed that Anderson was not considered for the role. ECF No. 23-5, PageID.316-317. The position ultimately went to Mario Holmes, who was 48 and had worked at FCA for 24 years when he was selected for the position. ECF No. 23-5, PageID.316-317; ECF No. 28-47, PageID.1512, 1514.

Likewise, as Jacquet began discussions about who could replace Anderson in early 2023, Marc Issner ("Issner"), then 39 years old, and Amanda French ("French"), then in her mid-40s, were identified as potential candidates. ECF No. 23-5, PageID.308; ECF No. 28-46, PageID.1437. Issner, who had worked at FCA

for 14 years, emerged as the leading candidate. ECF No. 28-41, PageID.1090-1091. Issner had received a mix of "medium" and "high" performance reviews during his tenure at FCA and had received mixed feedback about both his communication skills and demeanor. *See* ECF No. 28-38. Nonetheless, Jacquet decided that Issner would be a good fit for the position. ECF No. 28-41, PageID.1090-1091.

**FCA Fires Anderson**

FCA eventually decided to fire Anderson. The parties dispute who made the decision to terminate Anderson. ECF No. 23, PageID.140; ECF No. 28, PageID.530. The record reflects that Jacquet, Kaufman, Monroe, and Katarina Dusic (then a member of FCA HR) were involved in the discussion about firing Anderson. ECF No. 28-39, PageID.716. Anderson posits that Jacquet was "the ultimate decisionmaker in the decision to terminate [his] employment," as Jacquet was Kaufman's supervisor, and the FCA HR members involved in the discussion were simply working at Jacquet's behest. ECF No. 28, PageID.530. Jacquet stated that his only involvement was "in the vision that we should make a change at the head of the platform." ECF No.28-41, PageID.1083. FCA contends that Jacquet "did not play any role in the decision to terminate Plaintiff's employment," and rather, Helen Malian-Garant made the decision to fire Anderson. ECF No. 23, PageID.140; ECF No. 32, PageID.1607.

In August 2023, just before his termination, Anderson proposed a redesign of the platform that cut $2,000 in manufacturing costs and approximately 260 pounds of weight. ECF No. 28-41, PageID.1083. Jacquet was pleased with the redesigned platform, which he named "STLA Eco." ECF No. 28-41, PageID.1083.

However, in September 2023, during a meeting with Kaufman and Monroe, Anderson was fired from FCA. ECF No. 28-32, PageID.665. Anderson was informed it was due to his poor performance in failing to deliver work product as requested. *See* ECF No. 1, PageID.14. The record reflects that no other FCA employees were terminated in 2023 because they received a "meets some expectations" rating. ECF No. 28-43, PageID.1261.

**STLA Large Launches After Anderson's Termination**

In October 2023, Marc Issner was selected to fulfill Anderson's former role. Issner was 40 years old at the time. *See* ECF No. 1, PageID.14. That same month, an engineer at FCA indicated that FCA was "moving forward" with "the redesign they have called STLA ECO," that was presented "just prior to [Anderson's] departure from the company." ECF No. 28-31, PageID.663. She also noted that they would potentially move forward with STLA Large. *Id.* FCA publicly unveiled the STLA Large platform in January 2024. *See* ECF No. 28-36.

**Anderson filed this Action**

Anderson commenced this action against FCA on April 9, 2024. ECF No. 1. Anderson seeks relief for: age discrimination under the ADEA and ELCRA for wrongful termination and failure to promote. *Id.* FCA filed the instant Motion for Summary Judgment on both of Anderson's claims. *See* ECF No. 23. The Motion is fully briefed, with a sufficient record before the Court; therefore, oral argument is unnecessary to reach disposition. *See* ECF Nos. 28, 32; E.D. Mich. LR 7.1(f).

**II.**

Under Federal Rule of Civil Procedure 56, a motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating the motion, the Court must determine "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

To survive summary judgment, the nonmoving party "must present significant probative evidence[,]" showcasing doubt through a disagreement on the material facts" of the case. *See Walden v. GE Int'l, Inc.*, 119 F.4th 1049, 1057 (6th Cir. 2024) (quoting *Green Genie, Inc. v. City of Detroit, Mich.*, 63 F.4th 521, 526 (6th Cir.

2023)). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to survive the summary judgment stage. *Anderson*, 477 U.S. at 252.

When evaluating discrimination claims at summary judgment, parties can rely on direct or indirect evidence. *See Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2006) (applied in ADEA claims); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003) (applied in ELCRA claims). When indirect evidence is used as support, the Court applies the *McDonnell-Douglas* framework to the burden of production. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Redlin v. Gross Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606-07, 613 (6th Cir. 2019) (citations omitted); *Conti v. Am. Axle & Mfg., Inc.*, 326 F. App'x 900, 908 (6th Cir. 2009) ("ELCRA plaintiff also may rely on the indirect, burden-shifting approach sanctioned in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).").

Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of the claim. *See George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020); *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the *prima facie* case is shown, the burden then shifts to the defendant to "articulate some legitimate, non-discriminatory or retaliatory reason for their actions." *George*, 966 F.3d at 459. If satisfied, the burden then shifts back to the plaintiff to show the articulated reason is pretextual. *Laster*, 746 F.3d at 730.

"Although the burden of production shifts between the parties, the plaintiff bears the burden of persuasion through the process." *Id.* (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007)). And the Court's duty is to "not allow 'this burden-shifting analysis to obfuscate the appropriate question—whether there exists a genuine issue of material fact[]'"at each stage of the analysis. *See Jackson v. VHS Detroit Receiving Hops., Inc.*, 814 F.3d 769, 776 (6th Cir. 2016) ("*VHS Detroit*") (citing *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

**III.**

Defendant begins its motion by arguing that there is no direct evidence of age discrimination. ECF No. 23, PageID.146-148. Anderson appears to concede that there is no direct evidence of age discrimination in the record and proceeds with his argument under the *McDonnell Douglas* framework. *See generally* ECF No. 28.

Accordingly, the Court will proceed with its analysis using the *McDonnell Douglas* framework.

Anderson's age discrimination claims under ADEA (Count 1) and ELCRA (Count 2), are both based on two theories: wrongful termination and failure to promote. *See generally* ECF No. 1. FCA seeks summary judgement on both claims, arguing Anderson failed to satisfy his burden at the *prima facie* stage on both claims. *See generally* ECF No. 23. As the Complaint groups both theories under each count, the Court will address each theory in turn.

Generally, both statutes prohibit employers from failing or refusing to hire or to discharge any individual or otherwise discriminate against any individual regarding their compensation, terms, conditions, or privileges of employment *because of* their age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (citing 29 U.S.C. § 623(a)(1)) (emphasis added); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003) (citing the same under MICH. COMP. LAWS § 37.2202(1)(A)).

Age discrimination claims under ADEA and ELCRA are analyzed in the same manner. *See Hiber v. Oakland Cnty., Mich.*, 136 F.4th 308, 328 (6th Cir. 2025) (citing *Geiger v. Tower Auto*, 579 F.3d 614, 626 (6th Cir. 2009)). And pursuant to both claims, Anderson must maintain the burden of *persuasion* "that age was the 'but-for' cause of FCA's adverse action." *See Provenzano v. LCI Holdings, Inc.*,

663 F.3d 806, 813 (6th Cir. 2011) (emphasis added); *accord Rouch World, LLC v. Dep't of Civil Rights*, 987 N.W.2d 501, 512 (Mich. 2022) (citing *Hecht v. Nat'l Heritage Academies, Inc.*, 886 N.W.2d 135 (Mich. 2016)) (ELCRA but-for causation standard). This is done by satisfying all of the requirements for a *prima facie* case. *See Provenzano*, 663 F.3d at 819.

**A. FAILURE TO PROMOTE**

As an initial matter, the parties dispute whether FCA moved for summary judgment on its failure to promote claims under both the ADEA and ELCRA. Anderson argues that FCA has waived any argument that it is entitled to summary judgment on his failure to promote claim because FCA focused only on the wrongful termination claim in its motion and did not develop its failure to promote argument. ECF No. 28, PageID.547, n.7. FCA responds by asserting that its arguments on the *prima facie* elements of the failure to promote claim can be found on pages 13 and 21 of their brief. ECF No. 32, PageID.1611, n.4. The Court agrees with Anderson that FCA has waived its failure to promote argument.

The referenced pages of FCA's Motion for Summary Judgment, pages 13 and 21 (PageID.143 and 151, respectively) do not address the elements of a failure to promote claim. Page 13, or PageID.143, is in FCA's Statement of Facts and contains no legal arguments. Page 21, or PageID.151, which is in the section of FCA's Motion addressing "but-for" causation, has zero citations to the record to support its

assertions about the respective qualifications of Mark Issner and Mario Holmes. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Further, the cases FCA cites on pages 21-22 of the Motion are inapposite. Each cited case addresses an age discrimination claim brought by an employee whose company underwent a restructuring or reduction of force. *See Dabrowski v. Warner-Lambert Co.*, 815 F.2d 1076, 1077 (6th Cir. 1987) (noting that the plaintiff's job was terminated when, in the face of economic headwinds, "the Detroit facility where [the plaintiff] worked was closed and its operations moved elsewhere"); *Sahadi v. Reynolds Chemical*, 636 F.2d 1116, 1116 (6th Cir. 1980) (describing how plaintiff's termination occurred after "a downturn in the auto industry adversely affected [the company] and influenced the company . . . to decrease its workforce"); *Matras v. Amoco Oil Co.*, 385 N.W.2d 586, 588 (1986) (noting that plaintiff was terminated after the company "decided to reorganize and reduce its sales force").

The Sixth Circuit has made clear that a different, higher standard applies to age discrimination claims brought in the face of economic retrenchment, such that "where a company is in the process of restructuring its work force because of economic problems, an unsuccessful older employee who brings suit for age

discrimination *must show more* than a mere age difference between himself and those employees who better weather the storm.*"* *Dabrowski*, 815 F.2d at 1080 (emphasis added). Here, FCA does not assert that a reduction in force or restructuring led to Anderson's termination.

Additionally, two of the cases cited, *Sahadi* and *Matras*, address wrongful termination claims, not failure to promote claims. The third, *Dabrowski*, relies on an outdated articulation of the test for a failure to promote claim—the Sixth Circuit has since developed a more exacting test for failure to promote claims to account for the fact-intensive nature of employment discrimination inquiries. *Compare Dabrowski*, 815 F.2d 1076 at 1078-70 *with Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812-18 (6th Cir. 2011) (applying modern test for failure to promote claims).

Even assuming FCA had argued its failure to promote claim, the Court would have reason to find that at minimum, a genuine dispute exists as to whether FCA's proffered reasons for promoting Mario Holmes, rather than Anderson, to the Senior Vice President of Advanced Vehicle Engineering position were pretextual. *Provenzano,* 663 F.3d at 815. FCA claims that Anderson was not promoted because he was "too much focused on the technical and performance aspect" such that he would not be able to work with people across a range of teams and disciplines. ECF No. 23-5, PageID.317. But the record shows that over the course of Anderson's

career, he worked successfully with enough people across a range of teams that he was promoted several times, including to an executive level position. ECF No. 28-3, PageID.574. And in his 2021 performance evaluation, Kaufman, Anderson's direct manager, indicated he was "a strong leader on one of the most important Stellantis initiatives," and "exhibited positive development in his ability to listen and collaborate with others across the company throughout the year." ECF No. 28-16, PageID.617. This, in combination with the undisputed fact that Anderson had superior technical skills than Holmes, *see* ECF No. 28-44, PageID.1367, could lead to a rational trier of fact to find that age played a factor in the determination to select Holmes.

Accordingly, summary judgment is denied on the failure to promote theory.

### B. WRONGFUL TERMINATION AGE DISCRIMINATION

FCA also argues that it should be granted summary judgment on Anderson's wrongful termination claim under the ADEA and ELCRA. Again, Anderson appears to concede that there is no direct evidence of age discrimination in the record and proceeds with his argument under the *McDonnell Douglas* framework. *See generally* ECF No. 28. Accordingly, the Court will proceed with its analysis using the *McDonnell Douglas* framework.

To establish a *prima facie* case of age discrimination under the ADEA for his wrongful termination claim, Anderson must show (1) he was over the age of 40; (2)

the defendant took an adverse employment action against him; (3) he was qualified for his position; and (4) the defendant replaced him with someone outside of his protected class or treated him differently than a similarly situated nonprotected employee. *McNeal v. City of Blue Ash*, 117 F.4th 887, 895 (6th Cir. 2024). The point at this stage is to eliminate the most common nondiscriminatory reasons for FCA's actions. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). The burden at the prima facie stage is "not onerous." *Id.* (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)). The parties are in dispute over the fourth element of the *prima facie* test.[4]

***1. Prima Facie Case***

FCA argues that Anderson has not identified any similarly situated comparators and has accordingly not established a *prima facie* case wrongful termination claim. ECF No. 23, PageID.148. Anderson counters that he has satisfied the fourth prong of the *prima facie* case because he has shown that after his termination, he was replaced by a younger person. ECF No. 28, PageID.549. FCA makes essentially the same argument in their reply, which is that Anderson has failed

[4] Anderson argues that FCA has waived its argument on the second element of the *prima facie* test – that he was not qualified for the position he held at the time of his termination. ECF No. 28, PageID.548. The Court agrees. FCA simply states that "Plaintiff is unable to establish . . . that he was qualified for his position at the time of his termination," but provides no legal argument to support this assertion. ECF No. 23, PageID.148. As noted above, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125 F.3d at 995-96.

to identify any similarly situated comparators outside of his protected age class who were treated more favorably than he was. ECF No. 23, PageID.148.

But the fourth element of the *prima facie* case for wrongful termination only requires an ADEA plaintiff to show *either* that they were replaced by a younger worker *or* that similarly situated, non-protected employees were treated more favorably, not both. *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 521-522 (6th Cir. 2008). The fact that Mark Issner replaced Anderson in his position is undisputed. ECF No. 23, PageID.140. It is also undisputed that Mark Issner is approximately 22 years younger than Anderson. ECF No. 28, PageID.549.[5] As no other elements are in dispute, the Court finds that Anderson has satisfied the *prima facie* burden for his wrongful termination claim.

### *2. Legitimate, Non-Discriminatory Reason for Adverse Employment Action*

Because Anderson has established a *prima facie* case, the burden of production shifts to FCA to "articulate some legitimate, nondiscriminatory reason" for Anderson's termination. *McDonnell Douglas*, 411 U.S. at 802. FCA alleges Anderson's age was not the reason he was terminated. ECF No. 23, PageID.145-146. Rather, FCA argues, Anderson's termination was the direct result of his failure

[5] Many courts have concluded that "[a]ge differences of ten or more years have generally been held to be sufficiently substantial to meet the requirement of the fourth part of age discrimination *prima facie* case." *Grosjean v. First Energy Corp.,* 349 F.3d 332, 336 (6th Cir. 2003), *id.* at 337 (collecting cases).

to produce a vehicle for the STLA Large platform that was under weight, as his supervisor requested he do for over a year. ECF No. 23, PageID.154; ECF No. 23-5, PageID.303-304. FCA points to the fact that Anderson focused on technical aspects of STLA Large at the expense of cost, weight, quality, and timing, which led to a platform that did not meet the company's objectives. ECF No. 23-5, PageID.303-304. Failure to perform is a legitimate non-discriminatory reason for termination. *See Provenzano*, 663 F.3d at 815 (finding that employer had met its burden of production at the second stage of the *McDonnell Douglas* analysis by providing a detailed explanation of the plaintiff's job performance issues). The Court, therefore, looks to see if Anderson can demonstrate FCA's non-discriminatory explanation was pretextual.

***3. Pretext***

Pretext is a "commonsense inquiry" that asks: "did the employer fire the employee for the stated reason or not?" *See Jackson v. Genesee Cnty. Rd. Comm'n,* 999 F.3d 333, 351 (6th Cir. 2021). Plaintiffs typically show pretext in one of three ways: by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (citation omitted).

Anderson argues that there is "a wealth of evidence of discriminatory animus and pretext" to refute FCA's argument that he was fired for his job performance. ECF No. 28, PageID.551-552. First, Anderson argues that he delivered an approved Large Platform redesign, the STLA-Eco, that Jacquet was very pleased with, and FCA publicly launched in January 2024. ECF No. 28, PageID.552; ECF No. 28-36, PageID.677. He notes that FCA's 2024 press release about STLA Large indicates that it will support various vehicles, arguing that this undermines FCA's assertion that he failed to deliver on the platform he was tasked with developing. ECF No. 28, PageID.552; ECF No. 28-31, PageID.663; ECF No. 28-36, PageID.677.

Second, Anderson argues that Jacquet had long "demonstrated a discriminatory bias based on age." ECF No. 28, PageID.552. Anderson points to deposition testimony from Monroe, who stated that Jacquet, had "blatantly asked [her] two or three times" if it is "ever appropriate to encourage people to retire." ECF No. 28-43, PageID.1288. Monroe further testified that on one occasion before Jacquet met with Anderson, Jacquet had to be reminded "that we shouldn't be discussing retirement with anybody, specifically, with Art [Anderson]." ECF No. 28-43, PageID.1290. Additionally, Anderson points to deposition testimony from Kaufman, his direct supervisor, who was concerned that Jacquet would "look at Art [Anderson] and say something to the effect of why don't you just retire." ECF No. 28-42, PageID.1178.

Third, Anderson notes that his mentee, Marc Issner, who had received similar substantive feedback from supervisors about his communication style and leadership, was selected to replace him. *See* ECF No. 28-38. Issner was just 39 years old when he was tapped to step into Anderson's role. ECF No. 28-46, PageID.1437. Issner's performance reviews—like Anderson's—at times noted that he needed to be more open to the suggestions of others, and more conscious of how he communicated with others on his teams. ECF No. 28-38, PageID.705-706.

And finally, Anderson points to the fact that FCA offered conflicting accounts about who authorized his termination. ECF No. 28, PageID.553. FCA argues in its motion that Jacquet "did not play any role in the decision to terminate Plaintiff's employment," and that Heather Malian-Garant was the one who made the decision to fire Anderson. ECF No. 23, PageID.140; ECF No. 32, PageID.1607. Jacquet testified that he was not involved in Anderson's termination, stating that his only involvement was "in the vision that we should make a change at the head of the platform." ECF No. 28-41, PageID.1083. Helen Malian-Garant testified that she made the decision to fire Anderson. ECF No. 32-2, PageID.1628. However, in response to an interrogatory, FCA stated that Jacquet, Kaufman, Monroe, and Dusic were all involved in the discussion about firing Anderson. ECF No. 28-39, PageID.716. A reasonable jury could find that FCA's contradictory statements about who was responsible for firing Anderson are evidence of pretext, especially as

FCA's contradictory statements pertain to whether Jacquet—whom Anderson asserts discriminated against him on the basis of his age—was involved in the decision to fire Anderson. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.), *opinion amended on denial of reh'g*, 97 F.3d 833 (6th Cir. 1996).

FCA, in turn, argues that even if Anderson can proffer evidence that his termination was pretextual, his claim still fails because the "honest belief" rule applies. ECF No. 23, PageID.155. Under the "honest belief" rule, if an employer "has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith v. Chrysler Corp*. 155 F.3d 799, 807-08 (6th Cir. 1998)). An employer demonstrates an honest belief in its reason for firing an employee "where it reasonably relied on the particularized facts that were before it at the time the decision was made." *Majewski*, 274 F.3d at 1117.

Here, FCA argues that Anderson's performance issues in 2022, his lack of leadership, and his failure to deliver a platform as requested by his supervisor are why he was fired. ECF No. 23, PageID.154-155. FCA also disputes that the platform "was successful," asserting that the company did not pursue STLA ECO "due to investment and timing targets," and that STLA Large "never met cost,

weight, and other targets." ECF No. 32, PageID.1612; ECF No. 32-4, PageID.1679-1680.

But the honest belief rule does not mean that a court should "blindly assume that an employer's description of its reasons is honest." *Smith*, 155 F.3d at 807. The rule gives the employee "the opportunity to produce "proof to the contrary" after the employer argues that it relied on particularized facts to make the adverse employment decision. *Id.* Anderson responds to FCA by arguing that the very performance review in 2022 that formed the basis for his dismissal was discriminatory. ECF No. 28, PageID.552. Anderson notes that Jacquet—the very person who he alleges demonstrated discriminatory age bias toward him and the ultimate decisionmaker for his performance evaluation—unilaterally lowered Anderson's 2022 performance evaluation from "Meets All Expectations," to "Meets Some Expectations," and did so over the recommendation of Anderson's direct supervisor. ECF No. 28-42, PageID.1134.

Anderson further notes that 2022 performance review notwithstanding, he had a "record of strong performance" over 39 years at FCA, and that from 2018 to 2021, he had "four consecutive years of being rated an "8" in the notoriously difficult 9-box rating system" that FCA used to evaluate employees. ECF No. 28, PageID.552. He highlights his 2021 performance review, which was completed by Kaufman and stated that he was "a strong leader on one of the most important Stellantis

initiatives," and "exhibited positive development in his ability to listen and collaborate with others across the company throughout the year." ECF No. 28-16, PageID.617.

And finally, Anderson argues that he was the only person at FCA who was terminated in 2023 after receiving a "3" on their annual performance review. ECF No. 28, PageID.552. He points to Monroe's testimony, where she noted that she did not know of another FCA employee who was fired in 2023 on the basis of a performance review stating that they meet some expectations. ECF No. 28-43, PageID.1261.

Viewing the facts in the light most favorable to the nonmoving party, a reasonable jury could conclude that FCA's proffered nondiscriminatory reason for terminating Anderson's employment is pretextual. Therefore, summary judgment is not appropriate.

**IV.**

Accordingly, the Court finds that a genuine dispute of material fact exists on Counts I and II of Anderson's Complaint. Therefore, FCA's Motion for Summary Judgment (ECF No. 23) is **DENIED**.

**IT IS SO ORDERED.**

Dated: September 30, 2026
Detroit, Michigan

s/Brandy R. McMillion
HON. BRANDY R. MCMILLION
United States District Judge